## D. H. GROVE v. H. G. HARRIS.

1. Execution was placed in a sheriff's hands, with instructions to levy on property of the defendants and make the money. Defendants were merchants, and had a stock of goods which they were openly engaged in selling. The sheriff failed to make a levy or collect the money, and the plaintiff in the execution sued him and his sureties for his failure to levy and return the execution. In defense to the action it was alleged and proved that there was an unrecorded and secret deed of trust upon the goods, to secure other creditors in a sum greater than their value, and that they were subsequently disposed of, and their proceeds applied to this debt. No notice of this unrecorded trust deed was fixed upon the plaintiff, nor does it appear that the sheriff was apprised of it until after the return day of the execution. *Held*, that these facts constituted no defense.

2. A levy made in gross upon a stock of goods is a good levy; the officer can make the invoice subsequently.

APPEAL from Galveston.    Tried below before the Hon. Peter W. Gray.

The material facts relied upon by the defendants are clearly indicated in the opinion of the court.    The judgment below was for $581, and was rendered in July, 1859.    The long delay in the final adjudication of the case appears to be accounted for by the death of parties.

A very very good brief was filed for the appellant, but it bears the signature of no counsel.

*W. H. Goddard*, for the appellee, filed an able argument upon both the facts and the law of the case.

WALKER, J.—This was an action brought in the district court in 1857, against the appellant Grove, as sheriff of Galveston county, and the securities on his official bond.    Harris, the appellee, had recovered a judgment against Lynch & Manly, merchants doing ing business in the city of Galveston.    Execution was sued out and placed in the hands of Grove, as sheriff of the county, with strict instructions to levy on property and make the money.    This he failed to do, and the only question for our consideration is, whether by his negligence he became liable to the judgment creditor, or whether there was anything in the circumstances of Lynch & Manly which will excuse him from such official negligence.    The evidence shows, that at the time Grove held the execution, Lynch was half owner of sixty-four acres of land on Galveston Island, and that his interest in the land was unencumbered, and that the firm was in possession of a stock of goods which they were selling in the usual manner of business.    But it appears that the goods had been deeded to E. B. Nichols, in trust to secure a debt of some $5000.

21—XXXV

to Pierce & Bacon, Eastern merchants. The deed of trust had never been recorded, but appears to have been kept a secret among the parties. Whether Grove, the sheriff, was let into the secret or not, does not appear from the evidence, nor is it a fact materially to be considered. There was no public record of the deed of trust at the time the execution was placed in the sheriff's hands; and even if the sheriff had known of the existence of such a deed, under the circumstances, it was his duty to make the levy. It is useless to contend that Nichols would have recorded his deed, and cut out the execution, if the sheriff had attempted to make his levy. The rule might have been otherwise, had notice been brought home to Harris of the existence of this unrecorded deed. A levy, made in view of a stock of goods in gross, is a good levy, and the sheriff would be entitled to the necessary time to make his invoice. The store house of Lynch & Manly was kept open, and they continued publicly to make sales of the goods, returning the proceeds to Nichols until the debt of Pierce & Bacon was reduced to about $3000. Then, it appears that one Sydnor accepted the bills of Lynch & Manly for this amount, and there is nothing to show that Sydnor was secured in these acceptances, under the deed to Nichols. But it does appear that the acceptances were not met by Lynch & Manly, and the remnant of the stock of goods was finally sold at auction, and the proceeds of sale, some $1600, applied to the benefit of Sydnor. There is nothing in the record by which we would be justified in saying that Grove was not guilty of gross official negligence, and there is nothing in the proceedings of the district court which would authorize us in reversing the judgment, and it must therefore be affirmed.

AFFIRMED.